**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRUCE DOUGHERTY and JONATHAN
DOUGHERTY,
       *Plaintiffs-Appellants,*

       v.

CITY OF COVINA; ROBERT
BOBKIEWICZ; KIM RANEY,
       *Defendants-Appellees.*

No. 09-56395

D.C. No.
2:08-cv-07114-PA-
CT

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
June 9, 2011—Pasadena, California

Filed August 16, 2011

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and Rudi M. Brewster,
District Judge.*

Opinion by Judge N.R. Smith;
Concurrence by Judge Brewster

*The Honorable Rudi M. Brewster, Senior District Judge for the U.S.
District Court for Southern California, San Diego, sitting by designation.

---

**COUNSEL**

Danielle L. Casselman and Gary S. Casselman (argued), Law Offices of Gary S. Casselman, Los Angeles, California, for the plaintiff-appellant.

Mary A. Pendergrass, Christopher M. Pisano (argued), and George Roscoe Trindle, III, Best Best & Krieger, Los Angeles, California, for the defendants-appellees.

---

**OPINION**

N.R.SMITH, Circuit Judge:

Under the totality of the circumstances, a search warrant issued to search a suspect's home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submit-

ted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect's attempted child molestation to possession of child pornography is the experience of the requesting police officer, with no further explanation. Our circuit, however, has not previously addressed this question. Therefore, the officers involved in the search are entitled to qualified immunity.

## *BACKGROUND*

On October 12, 2006, Officer Robert Bobkiewicz, of the City of Covina Police Department, and four other police officers (three from the City of Covina and one from the City of Glendora) searched Appellant Bruce Dougherty's[1] home pursuant to a warrant issued by a magistrate on October 11, 2006.[2] The search warrant authorized the officers to search for child pornography on Dougherty's computer and electronic media.

To obtain the search warrant, Officer Bobkiewicz submitted an affidavit reciting that he was involved in the investigation of Dougherty's inappropriate touching of one of his sixth grade students at Royal Oak Elementary School. The student reported that Dougherty had lifted her up in front of the class after she told him that she had won a cross-country meet. She reported that Dougherty's hands were touching her breasts when he lifted her up to a level where he could look at her buttocks. The student told Bobkiewicz that she had seen Dougherty look up the skirts and down the tops of other girls in the class. In interviews, other students confirmed the lifting

---

[1]Both Bruce Dougherty and his son, Jonathan, appealed the district court's ruling, but Jonathan abandoned his appeal. *See infra* Section V. Consequently, for simplicity, all references in this opinion to "Dougherty" refer only to the father, Bruce Doughtery.

[2]For purposes of this Opinion, the facts in the Complaint are taken as true. We reference the search warrant affidavit, upon which the Complaint necessarily relies, for these facts. See *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

incident to Bobkiewicz and also reported that Dougherty looked up the skirts and down the shirts of girls in the class. Officer Bobkiewicz also discussed the investigation with the Assistant Superintendent for the School District, Gloria Cortez. Cortez told Officer Bobkiewicz that she had conducted an investigation after the incident with the student described above. Her investigation turned up multiple reports of Dougherty touching girls' backs and appearing to search for bra straps with his hands (this information was corroborated by the former vice-principal at Royal Oak). Cortez's investigation also turned up a 2003 report of a student, who said that Dougherty pulled her shirt down to her waist while they were alone in the classroom. The investigation of that incident was not pursued, after it was determined the student made inconsistent statements. The mother of the student in that incident, however, later believed she made a mistake not believing her daughter. When police contacted that student (then in high school) to discuss the previous allegation, she recounted that Dougherty touched her bare breast and told her she was "a special girl."

In the affidavit, Officer Bobkiewicz also recounts that he had fourteen years of experience on the police force and had worked as a School Resource Officer. He had over 100 hours of training involving juvenile and sex crimes, had conducted hundreds of investigations related to sexual assaults and juveniles, and was the designated "Sex Crimes/Juvenile Detective" for the police department. The affidavit concludes with Officer Bobkiewicz stating that "based upon my training and experience . . . I know subjects involved in this type of criminal behavior have in their possession child pornography . . . ." The affidavit then requests the ability to seize Dougherty's computer, cameras, and electronic media and have them searched for child pornography. A magistrate signed the warrant on October 11, 2006.

When officers arrived at Dougherty's house, he allowed the officers to enter and search. However, when Dougherty asked

to see a warrant, Officer Bobkiewicz stated that he had forgotten it at the police station. During the search, the officers entered and moved about the house with their guns drawn. They awakened Dougherty's adult son, Jonathan, at gun point and gave him the option of leaving the house or sitting on the couch in the living room during the search. Jonathan chose to remain on the couch. The officers seized computers and "related items" from Dougherty's home. The computers and other items were not returned until December 27, 2007. No charges were filed against Dougherty.

After the search of Dougherty's house, Dougherty sued Officer Bobkiewicz, the City of Covina, and Kim Raney, the Chief of Police, for violating his constitutional rights.[3] Dougherty claimed (1) the City and the officers violated his and his son's Fourth Amendment right to be free from unreasonable search and seizure, (2) the City inadequately trained and inadequately investigated complaints about its officers (a *Monell* claim[4]), and (3) the City, Raney, and Bobkiewicz inadequately supervised and trained their subordinates with respect to the incidents alleged.

The district court dismissed Dougherty's complaint with prejudice on August 4, 2009. The court reviewed the complaint, the search warrant, and the affidavit. The court found the warrant was supported by probable cause, and that the detention of Dougherty and his son was reasonable. The district court further held Bobkiewicz was entitled to qualified immunity. Finally, the court dismissed the *Monell* claim on

[3]The Complaint names Does 1-10, at least some of whom represent officers involved in the search. The Does, however, have not been identified or served. Dougherty does not appeal the only issue that could implicate police officers other than Bobkiewicz — that the search was executed unreasonably. *See infra* Section V. Dougherty also does not allege or argue that any officers other than Bobkiewicz were involved in preparing the affidavit for the search warrant.

[4]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

the ground that *Monell* liability cannot be found if no constitutional violations occurred.

## *STANDARD OF REVIEW*

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The facts alleged in a complaint are to be taken as true and must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Mere legal conclusions "are not entitled to the assumption of truth." *Id.* The complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Denial of leave to amend is reviewed for an abuse of discretion. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).

## *DISCUSSION*

### I. Probable Cause

**[1]** "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). When an affidavit moves "beyond the 'bare bones,' " however, a "totality of the circumstances test" is employed. *Id.* at 238-39. Under the totality of the circumstances test, a neutral magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. The magistrate is free to

draw "reasonable inferences . . . from the material supplied to him by applicants for a warrant." *Id.* at 240.

**[2]** The "standards for determining probable cause for a search warrant" apply to a search for child pornography on a computer. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). Neither "certainty nor a preponderance of the evidence is required," but rather a "fair probability" that the evidence will be found. *Id.* The magistrate's determination of probable cause "should be paid great deference." *Id.* (internal citation and quotation marks omitted). "'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants.' " *Id.* at 1050-51 (quoting *Gates*, 462 U.S. at 237 n.10) (alteration omitted).

**[3]** Although there does not need to be direct evidence of solicitation of child pornography to create probable cause, *Kelley*, 482 F.3d at 1051-52, the reviewing court must make certain there was a "substantial basis" for the finding, *United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir. 1990) (citing *Gates*, 462 U.S. at 238). In *Weber*, we held that probable cause did not exist to search a house for child pornography when an affidavit recited only that a suspect had two years previously received a catalog of child pornography and had ordered four images of possible child pornography.[5] *Id.* at 1345. The affidavit in *Weber* included a statement from a police detective stating that he knew "the habits of 'child molesters,' 'pedophiles,' and 'child pornography collectors' and that from his knowledge of these classes of persons he could expect certain things to be at their houses, from diaries to sexual aids to photo developing equipment." *Id.* The affida-

---

[5]Probable cause did exist to search for the four images that Weber actually ordered from a fake catalog sent by the government. *Weber*, 923 F.3d at 1346.

vit did not, however, have a "whit of evidence" that Weber was a child molester, and it did not describe how many magazines or photographs it would take to qualify as a "collector." *Id.* We noted that "[i]t goes without saying that the government could not search Weber's house for evidence to prove Weber was a collector merely by alleging he was a collector." *Id.* We distinguished the probable cause demonstrated in the affidavit in *Weber* from the affidavit in *United States v. Rabe*, 848 F.2d 994 (9th Cir. 1988). We noted that, in *Rabe,* there was direct evidence that the defendant had child pornography in his home. *Id.* We also noted that the expert in *Rabe* specifically concluded that the defendant was a pedophile, and the expert and magistrate knew that the defendant admitted to owning child pornography and desired to take nude photos of children before the warrant was issued. *Weber*, 923 F.2d at 1345-46 (citing *Rabe*, 848 F.2d at 995-96).

If probable cause did not exist in *Weber*, it cannot exist here. In *Weber*, the affidavit included at least some direct evidence of the defendant's possible possession of child pornography, including a two-year-old delivery of a catalog containing child pornography, an order from a fake catalog with image names suggesting child pornography, and general information regarding collectors, pedophiles, and molesters. *Weber*, 923 F.3d at 1345. Here, by contrast, the affidavit includes only a three-year-old allegation of attempted molestation by one student and current allegations of inappropriate touching of and looking at students.

**[4]** The affidavit contains no facts tying the acts of Dougherty as a possible child molester to his possession of child pornography. The affidavit provides no evidence of receipt of child pornography. No expert "specifically concludes" Dougherty is a pedophile. In the affidavit, Officer Bobkiewicz states only that "[b]ased upon [his] training and experience . . . subjects in this type of criminal behavior have in their possession child pornography . . . ." The affidavit provides no indication that Dougherty was interested in viewing images of

naked children or of children performing sex acts. There is no evidence of conversations with students about sex acts, discussions with children about pictures or video, or other possible indications of interest in child pornography. Officer Bobkiewicz either did not search Dougherty's work computer or email account for indications of pedophilia or child pornography, or did so and did not find any. Indeed, the affidavit does not even verify that Dougherty owned a computer or the other targets of the search or had internet service or another means of receiving child pornography at his home.

Other circuits have split on the question of whether evidence of child molestation, alone, creates probable cause for a search warrant for child pornography. The Second Circuit has stated that a "crime allegedly involv[ing] the sexual abuse of a minor, [does] not relate to child pornography. . . . That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough."[6] *United States v. Falso*, 544 F.3d 110, 123 (2d Cir. 2008). The Sixth Circuit agrees that, when probable cause is established "for one crime (child molestation) but [the warrant is] designed and requested [to] search for evidence of an entirely different crime (child pornography)," it is "beyond dispute that the warrant [i]s defective." *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008). In fact, in *Hodson*, the evidence was much more related to viewing children in sex acts and to computers than the evidence in the affidavit here. There, in an internet chatroom, Hodson "confided that he . . . favored young boys, liked looking at his nine-and eleven-year-old sons naked, and had even had sex with his seven-year-old nephew. [Hodson] also expressed his desire to per-

---

[6]The Second Circuit also noted, however, that "nothing in the affidavit draws a correlation between a person's propensity to commit both types of crimes." *Falso*, 544 F.3d at 123. The *Falso* court did not consider whether a conclusory statement tying persons involved with sexual abuse of a minor to possession of child pornography would suffice to create probable cause in absence of more direct evidence or a more detailed explanation of why such a connection exists.

form oral sex on the presumptive twelve-year-old boy . . . and his willingness to travel . . . to do so." *Id.* at 287. Nonetheless, the Sixth Circuit firmly held that the warrant was "so lacking in indicia of probable cause that" not even the good-faith exception to unlawfully executed warrants could apply. *Id.* at 292-93.

The Eighth Circuit, however, has rejected the reasoning of *Falso* and *Hodson*, stating "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010). The affidavit in *Colbert*, however, did include evidence that the accused had enticed a child to come to his apartment. *Id.* at 577.

**[5]** Ultimately, the question of probable cause is "not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Thus, while the "totality of circumstances" could, in some instances, allow us to find probable cause to search for child pornography, Officer Bobkiewicz's conclusory statement tying this "subject," alleged to have molested two children and looked inappropriately at others, to "having in [his] possession child pornography" is insufficient to create probable cause here.

## II.   Qualified Immunity

**[6]** "A police officer is not entitled to qualified immunity if: (1) the facts show that the officers conduct violated a plaintiff's constitutional rights; and (2) those rights were clearly established at the time of the alleged violation." *Millender v. Cnty. of Los Angeles*, 620 F.3d 1016, 1023-24 (9th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)), *cert. granted*, 79 U.S.L.W. 3344 (U.S. June 27, 2011). The law in this circuit had not been clearly established regarding whether allegations of sexual misconduct or molestation at a place of work provide probable cause to search a residence for child pornography in the absence of an explanation tying together

the two crimes. Neither this court nor the Supreme Court has addressed this question. Further, as discussed *supra*, other Circuit Courts of Appeal have split on similar questions. *Compare Colbert*, 605 F.3d at 578, *with Falso*, 544 F.3d at 123, *and Hodson*, 543 F.3d at 292. Therefore, because the law was not clearly established at the time of the alleged events, the district court did not err in holding Bobkiewicz and the other police officers are entitled to qualified immunity. *See Pearson*, 555 U.S. at 243.

## III.   The *Monell* and Supervisory Liability Claims

Qualified immunity does not shield municipalities from liability. *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)). However, we "may affirm the district court's dismissal on any ground supported by the record." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Under *Twombly*, the Complaint does not state a plausible cause of action for either municipal or supervisory liability.

**[7]** A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of*

*Canton v. Harris*, 489 U.S. 378, 390 (1989). Similarly, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision, however, does not give rise to a *Monell* claim. *Id.*

**[8]** Here, Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the "formulaic recitation of a cause of action's elements" deemed insufficient by *Twombly*. *See* 550 U.S. at 555. Regarding the *Monell* claim, Dougherty alleged only that (1) "Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case[ ]" and (2) "Defendant CITY's polices and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage and/or harm caused thereby." The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the "moving force" behind his constitutional deprivation. Regarding supervisory liability, Dougherty alleged only "negligent" hiring and training and pointed to no instances of deliberate indifference. Dougherty failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Therefore, we affirm the district court's dismissal of these claims.

## IV.  Leave to Amend

**[9]** Dougherty briefly argues that he should have been allowed leave to amend. As we stated in *Albrecht v. Lund*:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Nevertheless, if a complaint

is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment of the complaint would be futile.

845 F.2d 193, 195 (9th Cir.), *modified*, 856 F.2d 111 (9th Cir. 1988) (internal citations and quotation marks omitted). In *Albrecht* we determined that amendment would be futile, because "Albrecht's claim of undue influence as an alternative basis for these counts is groundless. For example, Albrecht does not allege that Lund exercised excessive strength or that he was a dominant subject and Albrecht was a servient subject." *Id.* at 196 n.1. Just as in *Albrecht*, Dougherty failed to allege any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the "moving force" behind his constitutional deprivation. Dougherty could have identified any such fact in his briefing or argument before us, but he did not. Thus, because we must conclude that amendment would be futile, we affirm the district court's dismissal with prejudice of the *Monell* and supervisory liability claims, because amendment would be futile. *Id.* at 195.

## V. Lawfulness of the Search and Seizure

Dougherty apparently does not appeal the district court's ruling on whether the search was executed lawfully. He does not include this issue in his statement of issues and makes no argument as to this issue in his Opening Brief. Accordingly, it is not before us.

AFFIRMED.

---

BREWSTER, Judge, concurring in the judgment:

I conclude the search warrant was supported by probable cause. *United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006)

(en banc). I accord more deference to the independent judgment of the magistrate judge and to the experience and training of the investigating officer. Based upon Officer Bobkiewicz's specific training and experience in the field of sex crimes against children, the facts presented led him to conclude that an individual who molests children probably possesses child pornography. I agree with the Eighth Circuit's analysis in *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010), that it is a common sense leap that an adult male, who teaches sixth graders, engaged in this type of inappropriate conduct would likely possess child pornography. *Accord United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994); *United States v. Houston*, 754 F. Supp. 2d 1059, 1062-64 & n.1 (D. S.D. 2010); *see also Osborne v. Ohio*, 495 U.S. 103, 111 n.7 (1990). Dougherty's pattern of affirmative misconduct with several sixth grade students is closely related to an interest in looking at sexual images of minors. The facts suggested to Officer Bobkiewicz, a highly trained and experienced "Sex Crimes/Juvenile Detective," that a potential child predator has moved along the continuum of looking and into the realm of touching. Dougherty's active misconduct distinguishes his case from the cases involving defendants who may have passively received unsolicited child pornography. *E.g.*, *United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007); *United States v. Weber*, 923 F.3d 1338, 1345 (9th Cir. 1990). More importantly, the magistrate judge reviewed the affidavit and signed the search warrant. The magistrate judge's determination "should be paid great deference." *Gourde*, 440 F.3d at 1069 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Although I disagree with the probable cause analysis, I concur that the police officers are entitled to qualified immunity. Accordingly, my position would not alter the outcome of this case.