BERZON, Circuit Judge,
concurring:
I concur only because the outcome of this case is dictated by Dougherty v. City of Covina, 654 F.3d 892 (9th Cir.2011). Were we deciding this case on a blank slate, I would hold that the evidence on the iPod must be suppressed, because the search warrant was so lacking in probable cause as to render the officers’ reliance upon it objectively unreasonable. See United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The warrant was based upon the very type of “rambling boilerplate” that, under the law of this circuit, has been disentitled to the Leon exception to the exclusionary rule for over 20 years. See United States v. Weber, 923 F.2d 1338, 1345 (9th Cir. 1991).
I.
Needham was suspected of molesting a child in a mall restroom. On that basis, a state judge issued a warrant authorizing police to search Needham’s house for clothing matching the description of his outfit the day of the alleged molestation; the credit card that Needham used to purchase a juice at the mall that day; and mail, bills, or other documentation establishing Needham’s identity as the resident of the house. So far, so good.
But the warrant did not stop there. In an additional two-and-a-half pages, the warrant went on to authorize police to conduct a sweeping search for any and all computers, electronic devices, data storage devices, and papers at Needham’s house, and then to search within those devices and papers for child pornography.
If the warrant’s supporting affidavit had included any information linking Needham to child pornography, then perhaps such a sweeping search would have been supported by probable cause. But the affida *1197 vit included no such information. It referenced a decade-old criminal charge for “possession of obscene matter,” but did not indicate whether Needham was ever convicted of that charge, what type of “obscene matter” was at issue, or how that charge, incurred when Needham was a teenager, made it not just possible but probable that Needham would have child pornography in his house over ten years later.
It was not Needham’s criminal history, in any event, that the affidavit principally relied upon to justify the search for child pornography, but the following word cloud of vague associations between Needham and various other types of illicit actors:
Based upon my training and experience, NEEDHAM’S previous criminal history, and my discussions with other law enforcement professionals, I believe that NEEDHAM has an unnatural sexual interest in children. I have learned the following characteristics are found to exist and be true in cases involving persons who molest children, buy, produce, sell or trade child pornography and who are involved with child prostitutes. They receive sexual gratification and satisfaction from actual physical contact with minors, communications with minors and from fantasy involving the use of pictures, photographs or electronic media and writing on or about sexual activity with minors. These people collect sexually explicit material of children consisting of photographs, magazines, motion pictures, video tapes, DVD’s, electronic media, books and slides which they use for their own sexual gratification and fantasy. Such persons rarely, if ever, dispose of their sexually explicit materials, especially when they have taken the photographs or made the video involved, as these materials are treated as prized possessions.
As an initial matter, it is hard to tell what exactly this paragraph is saying or what, if anything, most of the words that it contains have to do with the investigation of Needham. There is certainly nothing in the affidavit suggesting that Needham was suspected of “producing] ... child pornography” or “involved with child prostitutes,” so those phrases are simply extraneous. And who exactly are the nefarious “[tjhese people” to whom the paragraph refers? The antecedent of that phrase is far from clear. Nor does the paragraph— or anything else in the affidavit — affirmatively state that the affiant has probable cause to believe that Needham, in particular, has downloaded child pornography onto computers in his home.
Nevertheless, attempting to give this affidavit the “common-sense” reading that we must, see Illinois v. Gates, 462 U.S. 213, 238-39,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we can assume that the investigating officer meant, in this paragraph, to be saying something like: “I have learned that [some? many? most?] people who molest children also collect child pornography. Needham is suspected of molesting a child. Therefore, Needham probably has child pornography in his house.”
The problem, so far as the Fourth Amendment is concerned, is that the affidavit nowhere states the officer’s basis for the asserted connection between child molestation and possession of child pornography. Nor does the affidavit explain why the asserted connection is so strong as to make it not just possible or likely but probable that Needham would possess child pornography at his house at the time of the search. The affidavit states only that the detective “[has] learned the following characteristics are found to exist and be true.” But how did she learn this? From reviewing empirical studies?[1] *1198 From her own past investigations? From discussing past investigations with her colleagues? From watching “Law and Order: SVU”? Even the prosecutor conceded, at the suppression hearing, that it would have been “preferable” had the officer referenced in the affidavit specific investigations that she had worked on in which suspects of child molestation were found to possess child pornography. Nor does the affidavit give any indication that the affiant officer has any special expertise or training in sex crimes, beyond her nine years of general work as a police officer and approximately seven months (at the time of the warrant) of investigating the broad category of “crimes against children.”[2]
None of this is to assert with any certainty that the officer did not have some basis for her belief about the asserted connection. But she did not explain her basis within the four corners of the affidavit, which is all that the district court and we, as a reviewing court, are able to consider. It is not the task of courts to surmise some basis for detectives after the fact, or to throw up our hands and defer to police “common sense” whenever they assert some link between various distinct types of crimes.
I am mindful that police have difficult jobs. But requiring that police provide the basis for their probable cause determinations within the four corners of the affidavit does not impose hypertechnical requirements on police. The magistrate must, of course, make a common-sense assessment of whatever basis is provided. See Gates, 462 U.S. at 238, 103 S.Ct. 2317. But the basis has to be provided. “Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.” Id. at 239, 103 S.Ct. 2317.
In conformity with these longstanding principles of Fourth Amendment law, and as we held in Dougherty when reviewing a similarly deficient warrant:
[A] search warrant issued to search a suspect’s home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect’s attempted child molestation to possession of child pornography is the experience of the requesting police officer, with no further explanation.
654 F.3d at 895 (emphasis added).
II.
Tellingly, the government does not even try to argue that the warrant established probable cause to believe that Needham *1199 possessed child pornography. Rather, the government rests its ease almost entirely on the argument that, even if the warrant did not establish probable cause, the officers who conducted the search relied upon it in objective good faith, so the evidence they found is admissible under Leon, 468 U.S. 897, 104 S.Ct. 3405.[3]
Were we deciding this issue as a question of first impression, I would reject this argument. Leon carved out a limited exception to the exclusionary rule, holding that evidence seized pursuant to an illegal search may still be admissible if the searching officers acted in objectively reasonable reliance on a warrant issued by a neutral magistrate. Id. at 926, 104 S.Ct. 3405. But even under Leon, exclusion of the evidence remains the proper remedy where, as here, an officer relies “on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Leon, 468 U.S. at 923, 104 S.Ct. 3405 (internal quotation marks omitted); see also United States v. Grant, 682 F.3d 827, 836 (9th Cir.2012). It is unreasonable to rely on a search warrant issued on the basis of an affidavit that “fails to establish at least a colorable argument for probable cause.” Grant, 682 F.3d at 836 (internal quotation marks omitted).
One type of affidavit that does not suffice for Leon purposes is known as the bare-bones affidavit. Cf Leon, 468 U.S. at 926, 104 S.Ct. 3405 (noting that there, the warrant “was supported by much more than a ‘bare bones’ affidavit”). Under the longstanding law of this circuit, an affidavit is bare-bones for Leon purposes if it rests upon “foundationless expert testimony” and there are no extenuating circumstances, such as time pressures upon the investigation, that could explain the affidavit’s deficiency. Weber, 923 F.2d at 1346. Leaving aside that Weber happens also to be a child pornography case, Weber’s holdings are broadly applicable, and would govern this case regardless of the subject matter: First, expert testimony cannot support a probable cause determination when it consists merely “of rambling boilerplate recitations designed to meet all law enforcement needs,” as opposed to targeted expert analysis of the particular case at hand. Id. at 1345. Second, when a warrant issues upon the basis of such “rambling boilerplate,” the Leon exception to the exclusionary rule does not apply. Id. at 1345, 1346.
Under Weber’s definition, the affidavit in this case was bare-bones: It contained “rambling boilerplate recitations” and “fat[tyj,” “foundationless expert testimony,” “but certainly no muscle.” Id. at 1345, 1346. In a single paragraph, the affidavit makes a variety of sweeping observations about various categories and subcategories of people, most of which simply have nothing to do with the investigation of Needham. This paragraph is the very definition of boilerplate: “[rjeady-made or all-purpose language that will fit in a variety of documents.” Black’s Law Dictionary (9th ed.2009). Jumping around from people who “molest[] children” to people “involved with child prostitutes” to *1200 people who “take[ ] ... photographs or ma[ke] ... video[s]” of child pornography, the paragraph appears “ready-made” for insertion into just about any investigation of any type of sex-related crime involving children. “It is clear that [this] portion of the affidavit was not drafted with the facts of this case or this particular defendant in mind.” Weber, 923 F.2d at 1345. And to the extent that the affidavit does attempt to draw a connection between child molestation and possession of child pornography, that connection is “foundationless.” The affidavit references what the officer has “learned,” but does not specify how or where she learned it.
In similar cases, several of our sister circuits have declined to apply the Leon exception. See John, 654 F.3d at 418-19; United States v. Doyle, 650 F.3d 460, 475-76 (4th Cir.2011); United States v. Hodson, 543 F.3d 286, 292-93 (6th Cir.2008); but see United States v. Falso, 544 F.3d 110, 125-30 (2d Cir.2008). An especially useful comparison is Doyle, in which the Fourth Circuit held that the Leon exception did not apply, and exclusion was the appropriate remedy, where “the application for a warrant to search a private residence for evidence of child pornography failed to indicate that the pictures allegedly possessed by the resident were in fact pornographic and provided no indication as to when the pictures were allegedly possessed.” 650 F.3d at 463. In that case, the warrant application included detailed allegations that Doyle had sexually assaulted three children, but only a single “mention” of facts conceivably related to pornography: “the statement that one of the alleged victims ‘disclosed to an Uncle that Doyle had shown the victim pictures of nude children.’ ” Id. at 472. Even though the statement was credible, it did not include any facts tending to show “that the pictures referenced ... actually constituted child pornography,” as opposed to mere nudity, or “when the pictures were possessed.” Id. at 473, 474. Given this absence of temporal and other necessary information in the warrant application, the officers’ reliance on the warrant was objectively unreasonable; “nothing [in the warrant] indicated when or if child pornography allegedly existed in Doyle’s home.” Id. at 475-76.
Another instructive comparison is Hod-son, in which, as in this case, “it [was] beyond dispute that the warrant was defective for lack of probable cause,” because the warrant’s supporting affidavit “established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).” 543 F.3d at 292. And in Hodson, the Sixth Circuit concluded that, under those circumstances, the Leon exception did not apply. Id. at 292-93. In Hodson, however, there was at least some evidence that the defendant had used a computer for an illicit purpose (specifically, to engage in a sexually explicit online chat with a person whom he believed to be a child). See id. at 287.[4] Nevertheless, the chat did not have anything to do with pornography, and so “it was unreasonable for the officer executing the warrant ... to believe that probable cause existed to search Hodson’s computers for child pornography based solely on a suspicion' — albeit a suspicion triggered by Hodson’s computer use — that Hodson had engaged in child molestation.” Id. at 293 (emphasis added).
If it was unreasonable for officers to rely on the warrant in Doyle, where there was at least some evidence in the affidavit *1201 that the defendant had possessed nude pictures — albeit no evidence as to whether the pictures were pornographic, or when they were possessed — and in Hodson— where there was at least some evidence in the affidavit that the defendant had used a computer for sexual contact with a minor — then surely it was unreasonable for the officers to rely on the warrant in this case. Here, the affidavit did not include even the stray mention of nude pictures that was deemed insufficient in Doyle, or the evidence of computer use that was deemed insufficient in Hodson. The only connection in the affidavit between Need-ham’s alleged child molestation and child pornography was the investigating officer’s personal belief that “Needham has an unnatural sexual interest in children,” followed by some disjointed rambling about the broadly overinclusive metacategory of “cases involving persons who molest children, buy, produce, sell, or trade child pornography and who are involved with child prostitutes.”
As any reasonable officer should know, the Fourth Amendment requires more. The law of this circuit has long been “clear”: “[A] warrant [cannot] be broader than the probable cause on which it [is] based.” Weber, 923 F.2d at 1346.
III.
Considering precedents under Leon, then, I would hold that the Leon exception does not apply in this case, and that the evidence on the iPod must be suppressed. But as the majority opinion correctly notes, we may not limit our inquiry to precedents applying Leon. As the Supreme Court recently reminded us, the Leon objective reasonableness standard is equivalent to the Section 1983 qualified immunity standard. See Messerschmidt v. Millender, - U.S. -, 132 S.Ct. 1235, 1245 n. 1, 182 L.Ed.2d 47 (2012). Therefore, the outcome of this case is dictated by our recent qualified immunity holding in Dougherty, 654 F.3d 892.
In Dougherty, we evaluated a very similar warrant in the context of a Section 1983 lawsuit. As noted above, we held that
a search warrant issued to search a suspect’s home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect’s attempted child molestation to possession of child pornography is the experience of the requesting police officer, with no further explanation.
Id. at 895.
Nevertheless, we also held in Dougherty that the officers who conducted the illegal search were entitled to qualified immunity, because “[t]he law in this circuit had not been clearly established regarding whether allegations of sexual misconduct or molestation ... provide probable cause to search a residence for child pornography in the absence of an explanation tying together the two crimes.” Id. at 900. To support this conclusion, Dougherty noted that the question was one of first impression in this circuit, other circuits had split on “similar questions,” and the Supreme Court had not yet addressed it. Id.
I find it difficult to square the probable cause holding in Dougherty with its qualified immunity holding. Dougherty relied heavily on Weber for its probable cause analysis, concluding that “[i]f probable cause did not exist in Weber, it cannot exist here.” 654 F.3d at 898. And yet, in its qualified immunity analysis, Dougherty did not apply or even discuss Weber’s further holding that it is objectively unreasonable to rely on a warrant as lacking in *1202 indicia of probable cause as was the Weber warrant. See id. at 899-900. Considering Dougherty’s implication that the affidavit at issue there was more deficient than the Weber affidavit, id. at 898, there is considerable tension between its probable cause and qualified immunity holdings.
But whatever internal tension it may contain, Dougherty is binding upon us as a three judge panel. As explained in the majority’s opinion, our grant of qualified immunity in Dougherty compels application of the Leon exception here. I therefore concur.

. As another court has noted, the empirical literature on links between child molestation *1198 and child pornography is "mixed” and most of the studies concern whether child pornography leads to child molestation, not “whether child molestors are more likely to possess child pornography.” Virgin Islands v. John, 654 F.3d 412, 423 n. 2 (3d Cir.2011) (Fuentes, J., dissenting).

. The affidavit was sworn in July 2010; the affiant states that she "was assigned to work as a Youth Services Bureau Detective and specialized in the investigation of crimes against children” in December 2009. Cf. United States v. Meek, 366 F.3d 705, 712-13 & n. 9 (9th Cir.2004) (expert opinion supported probable cause where affiant was "veteran sex crimes investigator,” and probable cause could be found even after excising the "singularly unhelpful” "boilerplate” from the affidavit); United States v. Seybold, 726 F.2d 502, 504 (9th Cir.1984) (probable cause supported where DEA agent specified in affidavit that he had "14 years’ experience in drug enforcement” and had "participated] in hundreds of searches”); United States v. Patterson, 492 F.2d 995, 997 (9th Cir.1974) (probable cause supported by observations of "experienced border agent”).

. Alternatively, the government argues that "the warrant properly allowed law enforcement to search for ... child pornography” because if child pornography were found in Needham's possession, that fact "could be relevant to show [Needham's] identity, motive, and intent” in a child molestation prosecution. Maybe so, but that argument is beside the point, because the warrant did not establish probable cause to believe that Need-ham possessed child pornography to begin with. "Under the Fourth Amendment, ... there must be probable cause to seize the particular things named in the warrant.” United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir.2009) (internal quotation marks and alterations omitted) (emphases added).

. In fact, Hodson was chatting with an undercover detective from the New Jersey Sheriff's Department, who was representing himself online as a 12-year-old boy. Hodson, 543 F.3d at 287.