**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN SCHLEGEL, on behalf of himself and all others similarly situated; CAROL ROBIN SCHLEGEL, on behalf of herself and all others similarly situated, *Plaintiffs-Appellants*, | No. 11-16816 D.C. No. 3:10-cv-05679-CRB |
| v. | OPINION |
| WELLS FARGO BANK, NA, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
March 15, 2013—San Francisco, California

Filed July 3, 2013

Before: J. Clifford Wallace and Sandra S. Ikuta, Circuit
Judges, and Marvin J. Garbis, Senior District Judge.[*]

Opinion by Judge Ikuta

---

[*] The Honorable Marvin J. Garbis, Senior District Judge for the U.S.
District Court for the District of Maryland, sitting by designation.

## SUMMARY[**]

### Foreclosure

The panel affirmed in part and reversed in part the dismissal of an action seeking relief under the Fair Debt Collection Practices Act and under the Equal Credit Opportunity Act, which makes it illegal for a creditor to discriminate against a credit applicant on the basis of race, color, religion, national origin, sex or marital status, or age.

The panel held that appellants' complaint did not plausibly allege that a bank that sent mortgage default notices despite the existence of a loan modification agreement was a "debt collector" under the FDCPA because the complaint did not allege that the principal purpose of the bank's business was debt collection, or that the bank was in the business of collecting the debts of others. The panel rejected a per se rule that a creditor cannot meet the definition of a debt collector.

The panel held that the complaint stated a claim under ECOA's notice requirement, which provides: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." The panel held that the bank's alleged acceleration of appellants' debt constituted a revocation of credit and thus met the definition of adverse action.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

S. Chandler Visher, Law Offices of S. Chandler Visher, San Francisco, California; Daniel M. Harris (argued) and Anthony P. Valach, Jr., The Law Offices of Daniel Harris, Chicago, Illinois, for Plaintiffs-Appellants.

Jan T. Chilton (argued), Mark D. Lonergan, and Michael J. Steiner, Severson & Werson, San Francisco, California, for Defendant-Appellee.

## OPINION

IKUTA, Circuit Judge:

John and Carol Schlegel appeal the dismissal of their action seeking relief under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p (2006), and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691f (2006). We affirm the district court's dismissal of the Schlegels' FDCPA claim, because their complaint did not plausibly allege that Wells Fargo was a "debt collector" for purposes of the Act. We reverse, however, the court's dismissal of the Schlegels' claim that Wells Fargo, in violation of ECOA, failed to give them notice within thirty days after taking an adverse action.

## I

In January 2009, John and Carol Robin Schlegel obtained a $157,605 loan from NTFN, Inc., secured by their Las

Cruces, New Mexico home.[1]  They subsequently fell behind on their mortgage payments, and in March 2010, filed a petition in bankruptcy.  As part of the bankruptcy process, they reaffirmed the loan pursuant to 11 U.S.C. § 524.  The loan and deed of trust were assigned to Wells Fargo.

On March 27, 2010, Wells Fargo proposed a loan modification agreement that retained the same interest rate but extended the maturity date of the loan from February 2039 to April 2050.  The bankruptcy court approved the loan modification agreement, which became effective on July 1, 2010, with payments to begin on August 1, 2010.  The Schlegels received a discharge in bankruptcy on July 9, 2010.

On July 19, 2010, Wells Fargo sent the Schlegels a default notice indicating that the Schlegels' loan was "in default for failure to make payments due," and stating that, unless the Schlegels became current on their loan payments by August 18, 2010, it would "become necessary to require immediate payment in full (also called acceleration) of [their] Mortgage Note and pursue the remedies provided for in [their] Mortgage or Deed of Trust, which include foreclosure."  The Schlegels contacted Wells Fargo, which "told them not to worry, to sit tight and to proceed with the loan modification."  Beginning August 1, 2010, the Schlegels made the monthly payments required under the modification agreement.

Notwithstanding its assurances, Wells Fargo did not correct its records regarding the status of the Schlegels' loan. The Schlegels received a second default notice, dated November 7, 2010, which stated that their mortgage was in

---

[1] The following facts are taken from the Schlegels' amended complaint.

default and that, unless they paid the amount due by December 7, 2010, Wells Fargo would proceed with acceleration of the loan and possibly commence foreclosure proceedings. When the Schlegels again called Wells Fargo on November 13 regarding this notice, Wells Fargo told them that no modification agreement was in effect and that they were in default under their loan. Wells Fargo then sent a third default notice, dated November 14, 2010, stating that the Schlegels were in default and that it would "become necessary . . . to accelerate the Mortgage Note and pursue the remedies against the property" unless the past due payments were made by December 14, 2010.

On December 3, 2010, the Schlegels sent a letter to Wells Fargo asking it to explain its failure to acknowledge the loan modification. When Wells Fargo did not respond, the Schlegels filed this lawsuit on December 14, 2010, requesting relief under the FDCPA and ECOA.

Despite the Schlegels' complaint, Wells Fargo sent yet another default notice, dated December 20, this time formally accelerating the loan. The notice stated: "You are hereby notified that, due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable." It also stated that the "loan file ha[d] been referred to" the bank's "attorney with instructions to begin foreclosure proceedings." Two days later, on December 22, Wells Fargo's attorneys sent the Schlegels a fifth default notice, threatening to commence foreclosure proceedings unless full payment was made by January 24, 2011. Only after this fifth default notice did Wells Fargo eventually acknowledge that the July 2010 modification agreement was in effect and that the default notices sent to the Schlegels were incorrect.

According to the Schlegels, this sequence of default notices from Wells Fargo "caused the Schlegels mental anguish," including worsening the effects of John Schlegel's post-traumatic stress disorder.

The district court dismissed the Schlegels' complaint for failure to state a claim, and the Schlegels timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II

We review de novo the district court's order dismissing the Schlegels' complaint for failure to state a claim upon which relief can be granted. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). In so doing, we accept as true all "well-pleaded factual allegations" in the complaint, which we construe "in the light most favorable" to the plaintiffs. *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012). In order to survive a motion to dismiss, the Schlegels' complaint had to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Schlegels' complaint raises two claims, one under the FDCPA and the other under ECOA. We address each claim in turn.

## A

Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

The Schlegels' complaint alleges that Wells Fargo violated two of the FDCPA's provisions. The first, 15 U.S.C. § 1692e, provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The second, 15 U.S.C. § 1692f, provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Because these prohibitions apply only to "debt collector[s]" as defined by the FDCPA, the complaint must plead "factual content that allows the court to draw the reasonable inference" that Wells Fargo is a debt collector. *Iqbal*, 556 U.S. at 678; *see also Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 570 (2006)).[2]

---

[2] Wells Fargo argues that it qualifies as a creditor under § 1692a(4), and therefore cannot be a debt collector. *See* 15 U.S.C. § 1692a(4) (excluding from the definition of "creditor" "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another"). In making this argument, Wells Fargo relies on out-of-circuit decisions holding that a person who meets the FDCPA definition of "creditor" is per se not a "debt collector." *See, e.g.*, *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 498 (7th Cir.

The FDCPA defines the phrase "debt collector" to include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).**³** On appeal, the Schlegels argue that Wells Fargo meets both definitions.

---

2008) ("The FDCPA covers debt collectors, not creditors, and these categories are mutually exclusive." (internal quotation marks omitted)); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). We reject this per se rule, which finds no support in the text of the FDCPA, but nevertheless conclude on other grounds that Wells Fargo does not meet the statutory definition of debt collector.

**³** 15 U.S.C. § 1692a(6) states, in relevant part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a. The definition expressly excludes six types of persons or organizations from the definition of "debt collector." § 1692a(6) (A)–(F). None of these subsections is relevant to this case.

**1**

According to the Schlegels, the amended complaint sufficiently alleges that Wells Fargo meets the first definition of "debt collector" by stating that "Wells Fargo is in the business of collecting debts and uses instrumentalities of interstate commerce in that business." The Schlegels concede that the complaint does not expressly state that the "principal purpose" of Wells Fargo's business is debt collection, as required by the first definition in § 1692a(6), but argue that the complaint "invoked" this concept. We disagree. The complaint fails to provide any factual basis from which we could plausibly infer that the principal purpose of Wells Fargo's business is debt collection. Rather, the complaint's factual matter, viewed in the light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA. *See Dougherty*, 654 F.3d at 900–01.

At oral argument, the Schlegels raised a different argument in support of the proposition that Wells Fargo fits within the first definition of "debt collector." Noting that this definition requires debt collection to be the "principal purpose" of "any business," they argue that the word "business" does not mean "company," but rather any activity of a company. Thus, the Schlegels contend, the question is not whether Wells Fargo's principal business is the collection of debts, but whether Wells Fargo is engaged in any activity which has the principal purpose of collecting debts.

We reject this argument because it is not supported by the statutory text. The Schlegels' proposed definition would expand the term "debt collector" to include any person who collects a debt in the course of doing business, because such

a person would be engaged in the endeavor of debt collection. Such an expansive reading would render superfluous the second definition of "debt collector," which includes those "who regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Because interpretations that create superfluity are to be avoided, *Hearn v. W. Conf. of Teamsters Pension Tr. Fund*, 68 F.3d 301, 304 (9th Cir. 1995), we decline to adopt the Schlegels' strained understanding of the word "business" in § 1692a(6).

**2**

The Schlegels next argue that their complaint adequately alleged that Wells Fargo meets the second definition of debt collector, which as noted above includes any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). They contend that Wells Fargo fits this definition because it is in the business of collecting not only the debts it originated, but also debts that were originated by others. In this case, for example, the Schlegels' debt was originally owed to NTFN, Inc. before it was assigned to Wells Fargo.

This argument fails, because it would require us to overlook the word "another" in the second definition of "debt collector." The complaint makes no factual allegations from which we could plausibly infer that Wells Fargo regularly collects debts owed to someone other than Wells Fargo. Because NTFN, Inc. assigned the Schlegels' loan and deed of trust to Wells Fargo, Wells Fargo's collection efforts in this case relate only to debts owed to itself. The statute is not

susceptible to the Schlegels' interpretation that "owed or due another" means "originally owed or due another."

For this reason, we reject the Schlegels' argument that the following language in the complaint adequately alleges that Wells Fargo collects debts "owed or due another":

> Wells Fargo is in the business of collecting debts and uses instrumentalities of interstate commerce in that business. *See Oppong v. First Union Mortg. Corp.*, 215 Fed.Appx. 114 (3d Cir. 2007) ("the District Court was correct to conclude that Wells Fargo is a debt collector under the FDCPA" . . . "in a typical eighteen month period, it appears that Wells Fargo acquires 534 mortgages in default").

The quoted language itself does not allege that Wells Fargo collects the debts of another. Even if the cited opinion were fully incorporated into the complaint, it would not rectify this omission, because *Oppong* fails to differentiate between debts "owed to another" and debts originally owed to another but now owed to Wells Fargo. *See, e.g.*, *Oppong*, 215 F. App'x. at 119 (relying on evidence that Wells Fargo acquired a large number of defaulted mortgages and attempted to collect the debts as support for its conclusion that Wells Fargo collects debts owed to another).

Because the Schlegels' complaint does not plausibly allege that Wells Fargo is a debt collector under § 1692a(6),

we affirm the district court's dismissal of the Schlegels' FDCPA claim.[4]

## B

The Schlegels' complaint also raises a claim under ECOA, which makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). One way that ECOA effectuates this goal is through its notice requirement, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." *Id*. § 1691(d)(2). ECOA defines an "adverse action" as a:

> denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the

---

[4] In passing, the Schlegels suggest that the district court should not have dismissed without leave to amend. They make no argument in support of this assertion, however, and we therefore do not address it here. Fed. R. App. P. 28(a)(5), (8), (9); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

*Id*. § 1691(d)(6).

When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA. *Id*. § 1691e ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant"); *see also Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986) (quoting *Sayers v. Gen. Motors Acceptance Corp.*, 522 F. Supp. 835, 840 (W.D. Mo. 1981)).

The Schlegels contend that Wells Fargo's acceleration of their debt constituted a "revocation of credit" for purposes of the definition of "adverse action." ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). ECOA does not define "revocation," and so we read it as having its plain meaning: "The action of revoking, rescinding, or annulling; withdrawal." Oxford English Dictionary 838 (2d ed. 1989); *see also id*. (defining "revoke" as "[t]o annul, repeal, rescind, cancel"); Merriam-Webster's Collegiate Dictionary 1068 (11th ed. 2005) (defining "revoke" to mean: "to annul by recalling or taking back"). Thus, a lender revokes credit when it annuls, repeals, rescinds or cancels a right to defer payment of a debt.

Here, the Schlegels' complaint plausibly alleges that Wells Fargo annulled, repealed, rescinded, or canceled their

right to defer repayment of their loan.  Paragraph 25 of their complaint alleges that, on December 20, 2010, the Schlegels received a notice from the bank informing them that, "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable."  The complaint's allegations establish that the Schlegels made diligent efforts to determine whether Wells Fargo's default notices were mere clerical errors or represented Wells Fargo's termination of the loan modification agreement.  Based on Wells Fargo's prolonged non-responsiveness, and its affirmative statements regarding loan acceleration and default, the facts alleged plausibly give rise to the claim that Wells Fargo terminated the loan modification agreement and thereby revoked the Schlegels' credit for purposes of § 1691(d)(6).

Wells Fargo argues that its default notices to the Schlegels did not constitute adverse actions because the default notices had no binding effect and did not modify the terms of the Schlegels' loan or the loan modification agreement.  We disagree.  In essence, Wells Fargo is arguing that because its default notices violated the loan modification agreement, they could not constitute a revocation of credit. But neither the text of § 1691 nor its implementing regulations suggest that a "revocation of credit" must be valid and enforceable in order to constitute an adverse action. When Wells Fargo informed the Schlegels that it had accelerated their loan and was commencing foreclosure proceedings, its statements communicated the bank's refusal to abide by the terms of the loan modification agreement, which had given the Schlegels a longer period to repay the loan. On its face, this communication revoked the prior credit arrangement.

While sending a mistaken default notice would not necessarily constitute an adverse action, the Schlegels' complaint describes egregious conduct that goes far beyond clerical error. In fact, despite the Schlegels' repeated inquiries, Wells Fargo did not inform the Schlegels that its acceleration of their loan was a mistake until after the Schlegels filed a complaint. While Wells Fargo now claims that its acceleration of the loan was an unintentional error, and that the prior loan modification agreement remains in effect, such assertions do not erase its prior revocation of credit for purposes of ECOA.

Because the parties agree that Wells Fargo did not send the Schlegels an adverse action notice, the complaint's allegations that Wells Fargo took an adverse action without complying with ECOA's notice requirements are enough for the ECOA claim to survive a motion to dismiss. Accordingly, we reverse the district court's dismissal of their ECOA claim and remand for proceedings consistent with this opinion. Each party will bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**