**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JILLIAN MCADORY,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>M.N.S. & ASSOCIATES, LLC,<br>foreign limited liability company,<br>*Defendant*,<br><br>and<br><br>DNF ASSOCIATES, LLC, foreign<br>limited liability company,<br>*Defendant-Appellee.* | No. 18-35923<br><br>D.C. No.<br>3:17-cv-00777-HZ<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted October 24, 2019
Portland, Oregon

Filed March 9, 2020

Before: Jerome Farris, Carlos T. Bea, and
Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge Bea

## SUMMARY[*]

### Fair Debt Collection Practices Act

Reversing the district court's dismissal of an action under the Fair Debt Collection Practices Act and remanding, the panel held that a business that bought and profited from consumer debts, but outsourced direct collection activities, qualified as a "debt collector" subject to the requirements of the Act.

Joining the Third Circuit, the panel held that an entity that otherwise meets the "principal purpose" definition of debt collector under 15 U.S.C. § 1692(a)(6) (defining debt collector as "any business the principal purpose of which is the collection of any debts") cannot avoid liability under the FDCPA merely by hiring a third party to perform its debt collection activities.

Dissenting, Judge Bea wrote that the complaint failed to allege that defendant acted directly in any way to violate plaintiff's rights under the FDCPA; plaintiff did not adequately allege that defendant's "principal purpose" was the "collection of any debts;" and the word "collection" must, in context, describe the action of collecting.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Adam R. Pulver (argued) and Scott L. Nelson, Public Citizen Litigation Group, Washington, D.C.; Kelly D. Jones, Portland, Oregon; Nadia Dahab, Stolle Berne, Portland, Oregon; for Plaintiff-Appellant.

Brendan H. Little (argued), Lippes Mathias Wexler Friedman LLP, Buffalo, New York, for Defendant-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

This appeal requires us to consider whether a business that buys and profits from consumer debts, but outsources direct collection activities, qualifies as a "debt collector" for purposes of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C § 1692 *et seq.* Plaintiff McAdory's complaint alleged that DNF Associates, LLC qualified under the statute's first definition: "any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). The complaint did not allege that DNF interacted directly with consumers. The district court granted DNF's motion to dismiss, concluding that the operative complaint failed to state a claim against DNF because debt buyers that do not directly interact with consumers to collect debts do not qualify as debt collectors.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's judgment. We join the Third Circuit in concluding that an entity that otherwise meets the "principal purpose" definition of debt collector cannot avoid

liability under the FDCPA merely by hiring a third party to perform its debt collection activities. *Barbato v. Greystone All., LLC*, 916 F.3d 260, 261 (3d Cir.), *cert. denied sub nom., Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245 (2019).

## I.  Background

The operative complaint alleged that Jillian McAdory owed a debt to Kay Jewelers, and that DNF purchased the debt after McAdory stopped making timely payments.  The complaint also alleged that McAdory first learned of DNF when she received a letter sent by First Choice Assets informing her that she owed a debt to DNF, and that McAdory took no action in response to the letter because she did not recognize DNF.  McAdory averred that four months later, she received a voicemail message from an unidentified caller that referred to "asset verification" and an expedited "process for enforcement review."  According to the complaint, McAdory returned the call and spoke with someone who identified himself as an MNS agent, implied that he was a lawyer, and indicated that McAdory would be sued for the unpaid debt.  McAdory agreed to pay the debt during a subsequent telephone call with the same MNS agent. The agent emailed a document to McAdory that memorialized the agreement the same day.  Finally, the complaint alleged that contrary to the terms of the parties' agreement, MNS prematurely withdrew funds before an authorized payment date.

McAdory alleged that DNF and MNS committed eight separate violations of the FDCPA relating to MNS's telephonic message and withdrawal of funds. The complaint alleged that DNF violated the FDCPA by using "false, deceptive, or misleading representation or means in

connection with the collection of any debt," 15 U.S.C. § 1692e, and "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. The complaint did not allege that First Choice Assets violated the FDCPA or name First Choice as a defendant.

The operative complaint alleged that DNF is a debt collector because its principal purpose is "the collection of defaulted consumer debts that it purchases for pennies on the dollar," from which it "derives the vast majority of its income." It also alleged that DNF contracted with a network of other debt collectors that directly contacted consumers in DNF's name and at its direction. According to the complaint, DNF set the "parameters of the terms and amounts of the payments made by the debtors." The complaint did not allege that DNF directly contacted McAdory about her debt. Instead, McAdory claimed that DNF was vicariously and jointly liable for MNS's violations.

DNF moved to dismiss McAdory's operative complaint, arguing that a debt buyer that outsources collection activities to third-party contractors does not meet the FDCPA's definition of a "debt collector." The motion further argued that because DNF was not a debt collector, it could not be vicariously liable for MNS's alleged FDCPA violations.

The district court granted DNF's motion to dismiss, ruling that McAdory's complaint failed to state a claim against DNF because "[d]ebt purchasing companies like DNF who have no interactions with debtors and merely contract with third parties to collect on the debts they have purchased simply do not have the principal purpose of collecting debts." The court concluded there was little to suggest that Congress considered these companies when it drafted the FDCPA, and because the

FDCPA's substantive provisions govern interactions between consumers and debt collectors, the court reasoned that Congress intended the statute to apply only to those who directly interact with consumers.

The district court acknowledged that a debt purchasing company "may be a debt collector in the literal sense that it purchases debt for the purpose of making money by hiring a third party to collect on that debt." But the court reasoned that "[t]he fact that a business *benefits* from the collection of debt by an entirely separate third party does not necessarily make the principal purpose of that business the collection of those debts."

McAdory moved for leave to file a second amended complaint, seeking to add supplemental allegations that DNF filed collection lawsuits against consumers and was licensed as a debt collection agency in multiple states. The district court construed McAdory's filing as a motion for reconsideration and denied it. The court also clarified that it had dismissed DNF from the lawsuit with prejudice.

McAdory obtained an entry of default against MNS, which had not responded to her complaint, and moved for entry of a separate final judgment as to DNF pursuant to Federal Rule of Civil Procedure 54(b). The district court granted the motion, and allowed McAdory to seek review of its order granting DNF's motion to dismiss. The court observed that the issue was "a close one with courts around the country issuing conflicting decisions." McAdory timely appealed, and the parties agree that the question presented is whether a business must have direct interaction with consumers to qualify as a debt collector pursuant to the FDCPA.

## II.  Standard of Review

We review de novo the district court's order granting a motion to dismiss for failure to state a claim.  *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017).  We accept the complaint's well-pleaded allegations as true and construe all inferences in the light most favorable to the nonmoving party. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013).

## III.  Discussion

In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e). Concerned that unfair debt collection tactics contribute to personal bankruptcies, family instability, job loss, and privacy intrusions, *id.* § 1692(a), Congress imposed affirmative requirements on debt collectors and prohibited certain debt collection practices, *Rotkiske v. Klemm*, 140 S. Ct. 355, 357 (2019).  Because the statute is broadly remedial, we liberally construe the FDCPA in favor of consumers. *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1078–79 (9th Cir. 2016).

The FDCPA applies to debt collectors, which the statute defines in two alternative ways: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "[any person] who regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another."[1]    15 U.S.C.
§ 1692a(6); *see also Schlegel*, 720 F.3d at 1208.  We refer to
the first definition as the "principal purpose" prong (those
engaged in "any business the principal purpose of which is
the collection of any debts"), and we refer to the second
definition as the "regularly collects" prong (those "who
regularly collect[] . . . debts owed or due another").
15 U.S.C. § 1692a.  McAdory's operative complaint alleged
that DNF qualified as a debt collector under the principal
purpose prong.

McAdory argues the district court erred by ruling that the
FDCPA's principal purpose prong—its first definition of
"debt collector"—requires direct interaction with consumers.
We begin by examining the plain meaning of the statutory
text.  *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)
(observing that the plain language is the starting point of
statutory construction); *Seldovia Native Ass'n v. Lujan*,
904 F.2d 1335, 1341 (9th Cir. 1990) (noting that courts
determine plain meaning by looking to the language and
design of the statute as a whole).

The parties agree that the FDCPA uses the phrase
"principal purpose" to refer to a business's most important
goal or objective.  *See Barbato*, 916 F.3d at 267.
Determining a business's principal purpose thus involves
comparing and prioritizing its objectives, not analyzing the
means employed to achieve them.  Accordingly, the relevant
question in assessing a business's principal purpose is
whether debt collection is incidental to the business's

---

[1] The statute also provides other definitions of "debt collector," and
various exceptions to the statutory definitions, none of which are pertinent
to this appeal.  *See* 15 U.S.C. § 1692a(6).

objectives or whether it is the business's dominant, or principal, objective.  By contrast, the FDCPA's second definition of "debt collector" depends upon a person's regular *activities*—i.e., whether the person "regularly collects . . . debts."  15 U.S.C. § 1692a(6).

The Third Circuit recently examined the principal purpose prong in *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019).  There, the defendant argued it was not a debt collector because it took no collection action towards consumers, and because its principal purpose "was not the collection of debt but, rather, its acquisition."  916 F.3d at 263.  *Barbato* was an appeal from a summary judgment ruling, and the record reflected that the defendant's "only business [was] the purchasing of debts for the purpose of collecting on those debts, and . . . without the collection of those debts, [the defendant] would cease to exist."  *Id.* at 268. The Third Circuit affirmed the trial court's ruling that the defendant qualified as a debt collector under the principal purpose prong, *id.* at 261, 263, because "[t]he existence of a middleman does not change the essential nature—the 'principal purpose'—of [the defendant's] business."  *Id.* at 268.

DNF makes the same argument here, asserting that its principal purpose is not collecting debt, but "buying debt for investment purposes" to "profit on its investment."  McAdory objects that DNF raises this argument for the first time on appeal.  McAdory argues that merely acquiring consumer debt cannot truly be DNF's principal purpose, because if its only goal or objective were to acquire debt, it would soon go out of business.  McAdory maintains that "the *only* conduct DNF undertakes to 'profit' off the debts it buys is to hire others to collect it."  Although McAdory's point is well-

taken, it is nonetheless premature because DNF's argument about its principal purpose highlights a factual dispute. At the 12(b)(6) stage, we accept as true all well-pleaded factual allegations in the complaint and construe them in the light most favorable to McAdory. *Schlegel*, 720 F.3d at 1207. Here, the complaint alleged that DNF's principal purpose was to buy consumer debts in order to collect on them, and that this is how DNF generated most or all of its income. Because McAdory's complaint sufficiently alleged that DNF's principal purpose was to collect debt, we need not consider DNF's newly raised fact-based argument about its principal purpose. *See, e.g.*, *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("Because the district court granted a Rule 12(b)(6) motion to dismiss, our task is not to resolve any factual dispute, but merely to determine whether [the plaintiff's] allegations" state a plausible claim.). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

DNF urges us to focus on the first prong's use of the word "collection," which DNF defines as "the act or process of collection." Relying on this definition, DNF reads the first prong of § 1692a(6) to require that a business's principal purpose must be *the act of collecting* debts in order to qualify as a "debt collector." But DNF acknowledges that

---

[2] The dissent also argues that the complaint's "principal purpose" allegations are conclusory. We disagree. The complaint alleged that DNF acquires consumer debt for the purpose of collecting on it, from which it "derive[s] large profits" and "the vast majority of its income." By parsing the difference between "income" and "profit," the dissent departs from our role at the 12(b)(6) stage. *See Schlegel*, 720 F.3d at 1207.

"collection" is also defined as "that which is collected." *See Barbato*, 916 F.3d at 267.

In *Barbato*, the Third Circuit considered whether the principal purpose prong requires direct interaction with consumers, and rejected that interpretation. *Id.* The Third Circuit concluded that the word "collection" shifts the focus "from the *act* of collecting to *what* is collected, namely, the acquired debts." *Id.* at 267 (emphasis in original). The Third Circuit reasoned:

> In contrast to the [second prong's] "regularly collects" definition, where Congress explicitly used the verb "to collect" in describing the actions of those it intended the definition to cover, in the "principal purpose" definition, Congress used the noun "collection" and did not specify who must do the collecting or to whom the debt must be owed. Thus, by its terms, the "principal purpose" definition sweeps more broadly than the "regularly collects" definition . . . .

*Id.* at 267–68 (internal citations omitted). It was critical to the Third Circuit's rationale that "the 'regularly collects' definition employs a verb and the 'principal purpose' definition employs a noun." *Id.* at 267. We find this analysis of the statutory text persuasive and decline to read a direct interaction requirement into the principal purpose prong based on the phrase "the collection of any debts." Further, DNF's interpretation of the principal purpose prong would largely collapse the two alternative definitions of debt collector, contrary to the rule that "we presume differences in language like this convey differences in meaning." *Henson*

*v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017); *see also Schlegel*, 720 F.3d at 1209 (declining to adopt an interpretation of the principal purpose prong that would render superfluous the "regularly collects" prong).

Because the Third Circuit reasoned in *Barbato* that the first prong uses "collection" as a noun and the second prong uses "collects" as a verb, our dissenting colleague substitutes "stockpile" and "assortment" in prong one and treats "collection" as something to be gathered together for the sake of keeping it—like rare coins or antiques. Unsurprisingly, the dissent decides that this reading makes no sense. We agree that it would not, but the Third Circuit did not adopt "stockpile" or "assortment." *Barbato* merely recognized that the phrase "collection of any debts" in prong one describes the *type* of business Congress sought to regulate—i.e., one with a principal purpose of debt collection. In contrast, in prong two Congress used "collects" as a verb and defined debt collectors by the activities they regularly engage in.

Shifting away from § 1692a(6)'s text, DNF also argues that the FDCPA's other provisions support the district court's conclusion that Congress intended the principal purpose prong to apply only to those who have direct contact with consumers. In support of this argument, DNF points to the FDCPA's limitations on ways debt collectors may interact with consumers. *See, e.g.*, 15 U.S.C. § 1692c (regulating communications with consumers); § 1692d (prohibiting harassing or abusive conduct); § 1692e (prohibiting false, deceptive or misleading representations). We agree that many of the FDCPA's specific restrictions pertain to direct interactions with consumers, but the question we must answer is not whether the FDCPA regulates interaction with

consumers, which it clearly does, but which actors are subject to the statute's restrictions.

The fact that the FDCPA includes limits on direct collection activities does not require the conclusion that Congress intended to regulate only those entities that directly interact with consumers. First, the text of the principal purpose prong contains no such limitation, *see* § 1692a(6), and as *Barbato* explained, "'[c]ollection' by its very definition may be indirect, and that is the type of collection in which [the defendant] engages: it buys consumer debt and hires debt collectors to collect on it." 916 F.3d at 268. Second, the specific provisions DNF relies upon must be read in conjunction with other parts of the statute, which make plain that Congress recognized that some debt collectors do not directly interact with consumers. We know this because the "regularly collects" prong expressly applies to businesses that "directly or *indirectly*" collect debt. § 1692a(6) (emphasis added).

DNF also argues that legislative history reveals that Congress did not anticipate the emergence of the debt-buying industry when it enacted the FDCPA in 1977, and thus it could not have intended to regulate entities like DNF. We are not persuaded. First, the FDCPA's text is sufficiently clear that we need not resort to legislative history. *See Barbato*, 916 F.3d at 269; *Scott v. Jones*, 964 F.2d 314, 317 (4th Cir. 1992); *see also Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012). Second, to the extent we do consult legislative history, our interpretation of the principal purpose prong is consistent with Congress's desire to regulate debt collectors who "are likely to have no future contact with the consumer and often are [therefore] unconcerned with the consumer's opinion of them," rather than entities with ongoing customer

relationships that are generally "restrained by the desire to protect their good will when collecting past due accounts." S. Rep. No. 95–382, at *2, U.S. Code Cong. & Admin. News 1977, pp. 1695, 1696. Put differently, debt buyers profiting from debt collection lack market incentives that deter the sort of abusive debt collection practices Congress was motivated to regulate. As *Barbato* observed, "[u]nlike a traditional creditor, such as a bank or a retail outlet that has its own incentive to cultivate good will among its customers and for which debt collection is one of perhaps many parts of its business, an independent debt collector . . . has only one need for consumers: for them to pay their debts." 916 F.3d at 268–69.[3]

The Third Circuit recently observed, "[n]o longer do creditors simply hire debt collectors to serve their named role; rather, with increased frequency creditors sell debt to purchasers, who may again resell the debt, hire outside debt collectors to undertake collection efforts, or attempt to collect on their own." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (citing Federal Trade Commission, The Structure and Practices of the Debt Buying Industry 1 (2013)). We agree that the debt collection industry has

---

[3] DNF's description of debt collectors that do not own the debts they collect underscores this concern. According to DNF, "[i]f a debt collector does not collect on the debt, he is no worse off than he was before any attempt was made." By contrast, DNF observes a "debt buyer will have lost on that investment" if there is no collection. This view suggests that debt buyers like DNF who profit from the collection of debts they own face *greater* financial pressure to cut corners compared with those agencies that regularly collect debts due another. DNF's argument here also underscores our conclusion that DNF's principal purpose is not merely debt acquisition, but is instead the acquisition of debt for the purpose of collecting on it.

evolved since Congress passed the FDCPA, but these changes do not support the statutory interpretation DNF urges us to adopt. A primary purpose of the FDCPA was to protect consumers from abusive debt collection practices by debt collectors, 15 U.S.C. § 1692(e), and given the emergence of entities that purchase debt and subcontract regular collection activities, this purpose would be entirely circumvented if the Act's restrictions did not apply to entities like DNF. As we recently observed, Congress did not intend to ban debt collection; it intended to eliminate abusive, deceptive, and unfair collection practices. *Stimpson v. Midland Credit Mgmt., Inc*., 944 F.3d 1190, 1195 (9th Cir. 2019). Our interpretation of the principal purpose prong furthers the statute's purpose and puts DNF and other similar debt buyers on level footing with other debt collectors regulated by the FDCPA. *See* § 1692(e).

DNF also suggests that McAdory's position conflicts with the Supreme Court's decision in *Henson*. But in *Henson*, the Court interpreted the "regularly collects" prong and altogether declined to address the "principal purpose" prong.[4] 137 S. Ct. at 1721; *see also Barbato*, 916 F.3d at 266. *Henson* does not change the outcome here.

Finally, DNF argues that it cannot be a debt collector if it also meets the definition for "creditor." This argument erroneously assumes that the FDCPA uses these two terms in mutually exclusive ways. We have already rejected a per se rule that those who meet the FDCPA's definition of creditor cannot be debt collectors. *Schlegel*, 720 F.3d at 1208 n.2.

---

[4] *Henson* is further distinguishable because the defendant in that case asserted that its primary business was originating loans, not purchasing defaulted consumer debt. *See* 137 S. Ct. at 1725.

And in *Henson*, the Supreme Court declined to adopt the view that the FDCPA "treats everyone who attempts to collect a debt as either a 'debt collector' or a 'creditor,' but not both." *Henson*, 137 S. Ct. at 1724; *see also Barbato*, 916 F.3d at 266.

Contrary to the dissent's suggestion, we do not direct the district court on remand to discard the application of familiar principles of agency law when it addresses vicarious liability. Nor do we suggest that one businessperson may be liable for another just because they are in the same business. The circumstances under which an entity can be a "debt collector" logically precedes consideration of whether and when a debt collector can be held vicariously liable for the actions of another debt collector. On remand, the existing body of case law will govern the requirements of vicarious liability, and this opinion does nothing to alter that regime. *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (holding that "general principles of agency . . . form the basis of vicarious liability under the FDCPA"). Before our panel, McAdory's counsel expressly waived the argument that a non-debt collector can be held vicariously liable under the FDPCA. But McAdory's counsel went on to clarify that if DNF is found to be a debt collector, the next step—not yet reached by the trial court—will be to decide whether DNF is vicariously liable according to agency principles. McAdory recognizes, and we reiterate, that vicarious liability may be addressed on remand. We conclude that McAdory sufficiently alleged that DNF's principal purpose is the collection of debts as defined by the principal purpose prong of § 1692a(6). The complaint alleged that DNF lacks any other business purpose besides debt collection. These allegations are sufficient to allege that DNF

is a debt collector under the FDCPA, regardless of whether DNF outsources debt collection activities to a third party.

We reverse the district court's order granting DNF's motion to dismiss and remand to the district court for further proceedings.

**REVERSED AND REMANDED.**

BEA, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion for three reasons.

**I.**

The first reason is based on the operative complaint's undisputed utter lack of any allegations that DNF acted directly in any way to violate appellant McAdory's rights under the FDCPA.  As a matter of substantive law, then, DNF can be held liable only for the acts of co-defendant MNS on a theory of vicarious liability.  But the problem is, the FDCPA does not contain any textual basis for vicarious liability of one "debt collector" for the acts of another "debt collector," even were DNF validly to be classified as a "debt collector."  The notion that vicarious liability somehow attaches to one "debt collector" account the actions of another "debt collector" arises from the unexplained conclusion that such seems "a fair result." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (stating that its finding of vicariously liability "is a fair result because an entity that is itself a 'debt collector'—and hence subject to the

FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."). Why one businessman should be liable for the acts of another businessman in the same business *just because they are in the same business* is a mystery to me. If each is a "debt collector," each is subject to the duties owed by a debt collector to consumers. But why is there vicarious liability for another business's acts absent facts which establish common law respondeat superior? *Pollice* offered no reasoning as to what considerations enter into the court's conclusion of a "fair result," or what is the basis for the court determining that it was empowered to decide based on what it thought was a "fair result."

I am mindful, however, that Congress is thought to legislate on a background of settled legal principles, such as the common-law doctrine of *respondeat superior*, which does provide the basis for vicarious liability. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). It would be a relatively simple case for us to find plaintiff's allegations sufficient to state a claim for vicarious liability. After all, plaintiff does allege that DNF exercised control over the actions of the "physical debt collectors" such as MNS in such detail that reasonable jurors could find DNF actually controlled alleged "debt collector" MNS's acts toward McAdory, and that DNF should be liable for the legal effects of such acts. This should result in a reversal of the summary judgment in favor of DNF because the District Court failed to recognize that the complaint sufficiently alleged vicarious liability.

But we cannot do so here because Plaintiff-Appellant McAdory has expressly eschewed the argument that DNF could be vicariously liable for MNS's conduct without DNF qualifying as a "debt collector" under the FDCPA when

specifically questioned on this point at oral argument.[1]  We cannot consider arguments expressly waived.  *See, e.g.*, *In re Rodeo Canon Dev. Corp.*, 392 F. App'x 576, 579 (9th Cir. 2010).  Because Plaintiff-Appellant McAdory submits that her case must rise or fall on whether DNF qualifies as a "debt collector" for the purposes of the FDCPA, I would hold that DNF does not so qualify and affirm the district court's grant of summary judgment in favor of DNF for the reasons explained below.

I believe the Majority is incorrect in holding both that DNF must qualify as a "debt collector" under the FDCPA before it can be held liable for MNS's conduct, and that DNF does so qualify.  However, unlike the Third Circuit in *Pollice*, the Majority has thankfully affirmed that common law principles of *respondeat superior* will apply on remand, in

---

[1] The exchange at oral argument was as follows:

> Judge Bea: You're not taking the position that regardless whether DNF was a 'debt collector' . . . it should be liable [on a theory of] vicarious liability because it controlled the actions of MNS, which were allegedly a violation of . . . the federal act.

> Counsel for Appellant: Correct, we are arguing that, if DNF is found to be a 'debt collector,' it can be held—and then you would move on to the next question, which is look at the agency principles, and determine whether there is vicarious liability.

> Judge Bea: But it can't be held, according to the Appellant, unless it is a 'debt collector.'

> Counsel for Appellant: Correct, that was the question.

> Judge Bea: Thank you.

light of its holding that DNF is a "debt collector" under the FDCPA.

## II.

The second and third reasons for my dissent have to do with statutory interpretation.  I do not think that DNF is a "debt collector" who owes FDCPA statutory duties to McAdory, because McAdory has not adequately alleged that MNS's (2) "principal purpose" is (3) the "collection of any debts."

True, the opening sentence of the charging allegations of the complaint state: "The principle [sic] purpose of DNF is the collection of defaulted consumer debts . . . ."  But that allegation is simply the recitation of the statutory description of a "debt collector," the classically inadequate allegation invalidated by *Iqbal* and *Twombly*.[2]  No specific factual allegations follow that hollow conclusory allegation to make the description of DNF as a "debt collector" adequate.  Given that the operative complaint does not allege that DNF has any direct interactions with consumers, the only remaining question is whether its other factual, not conclusory, allegations allow us to conclude that such debt collection is nonetheless DNF's "principal purpose."

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The operative complaint alleges that DNF "derive[s] large profits" from "defaulted consumer debts that it purchases *for pennies on the dollar*." Accepted as true for the purposes of DNF's 12(b)(6) motion, this allegation does not establish that DNF's principal purpose is the collection of debt. First, if anything, the allegation establishes that debt collection is *not the only component* of DNF's business. The other integral part, as alleged by McAdory, is the *acquisition* of that debt at a discounted price ("for pennies on the dollar"). Second, this allegation is not surprising, as the principal purpose of nearly every firm in a market-based economic system is to make a profit by buying low and selling high. But the fact that a firm's profits are large—whether they are derived from purchasing discounted debt, collecting on that debt, or otherwise—says nothing about how *important* they are relative to other potential profit-making activities in the firm. In other words, just because DNF derives *a lot* of profit from the discounted debt it purchases, it does not tell us whether or not DNF derives *a lot more* profit from other, unrelated activities. McAdory alleges no facts which allow us to conclude what portion of DNF's *profits* derive from debt collection. Hence, it tells us nothing of DNF's single "principal purpose."

Further, McAdory alleges that "DNF actively participates in, directs, and derives the *vast majority of its income* from a large national debt collection network of which it is the head of." DNF contracts with third-party debt collectors around the country, according to McAdory, and supplies them with the debtors' personal information and parameters of collection. But none of these facts are sufficient to make out a claim that DNF has the "principal purpose" of debt collection, either. DNF's "income" is obviously different from its *profit*, and thus income, by itself, cannot tell us much

about the activity's importance to DNF. For aught that appears in the allegations of the complaint, the "vast majority" of DNF's *profit* could very well come from other activities having nothing to do with debt collection, even when we accept as true that the "vast majority" of its *income* is so produced. For all we know, maybe the "physical debt collectors" described in the operative complaint take such a large cut of any collected payments that the *profits* DNF derives from such activities are relatively unimportant to its overall business. In fact, that is exactly what the operative complaint suggests: that DNF "derive[s] [its] large profits" from debts that it has "purchase[d] for pennies on the dollar"—and perhaps has sold to others at a markup—and not from debts it has collected.

Thus, the Majority is at least half right: if DNF did not have some way of monetizing the debt it acquired, it would soon go out of business. Maj. Op. at 9. But in being half right, it is also half wrong: based on the allegations as they appear in the operative complaint, DNF would *also* go out of business if it could no longer acquire such debts at a price well below face value. According to the operative complaint, the factual allegations of which we must accept as true, *both activities* are integral to DNF's business. And the operative complaint contains no allegations or other inferences that would allow us to conclude which, if either, of these two activities qualifies as DNF's "principal purpose."

The bottom line, then, is that the allegations of the complaint do not sufficiently make out a claim that debt collection—even *indirect* debt collection—is the "most important" goal or aim of DNF. According to the complaint, the actual collection of debts is no more important to the production of profit than is the earlier purchase of the debt at

a price lower than the amount collected.  One cannot expect "large profits" if debt is bought dear and collected dear, or worse, collected cheap.

At best, the two acts—the purchase and the collection of debt—are both described in the complaint as the principal purposes of DNF.  But the FDCPA describes a "debt collector" as one who has "*the* principal purpose" of the "collection of any debts"—not one who has as "*a* principal purpose" such collection.  Thus, even were the Majority opinion's reading of "collection of any debts" correct, it would be only half right, but also half wrong.  Section 1692a(6) does not describe as a "debt collector" a person *one* of whose principal purposes is the collection of any debts.  It is an all or nothing description.  Clearly, for a profit motivated business, DNF does not qualify as a "debt collector" under the "principal purpose" prong of Sec. 1692a(6).

## III.

### A.

The third reason why Section 1692a(6) does not apply to DNF is that the word "collection" in the phrase "the collection of any debts" must, in context, describe the *action* of collecting, and not a *collection* of a set of items (such as debts).  In its interpretation of the statute, the Majority followed the only other Court of Appeals to have decided the issue. *Barbato v. Greystone All., LLC*, 916 F.3d 260, 261 (3d Cir.), *cert. denied sub nom. Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245 (2019).  The *Barbato* Court's interpretation of the statutory text, which the Majority adopted, relies heavily on a flawed grammatical analysis.  In

interpreting the phrase, "any business the principal purpose of which is the collection of any debts," 15 U.S.C. § 1692a(6), the Third Circuit reasoned:

> While it is true that "collection" can be defined as "the act or process of collecting," it can also be defined as "that which is collected." Collection, Random House Dictionary of the English Language 290 (1973). So defined, the focus shifts from the act of collecting to what is collected, namely, the acquired debts. As long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment.

916 F.3d at 267. While I agree that the word "collection" can be validly defined as "that which is collected" in certain contexts, this definition makes absolutely no sense here.

These interpretive errors are only compounded with the Third Circuit's distinctions based on the statutory words' parts of speech. The Majority notes approvingly that "[i]t was critical to the Third Circuit's rationale that 'the "regularly collects" definition employs a verb and the "principal purpose" definition employs a noun.'" Maj. Op. at 11 (citing *Barbato*, 916 F.3d at 267). And it is on this basis that the Majority rejects DNF's proposed definition, "the act or process of collecting." *Id.* at 10.

Because this simple grammatical error has now toppled two United States Courts of Appeals, I am afraid I must go back to basics. The mere fact that a word appears in the form

of a noun instead of the form of a verb does not mean that it cannot refer to action. "Action,"[3] in fact, is a noun. So are the words in DNF's proposed definition of collection, the "act"[4] or the "process"[5] of collection. And so are thousands of other words that refer to actions, like "arrival,"[6] "dismissal,"[7] "launch,"[8] "release,"[9] and "use."[10]

So yes, Congress used the form of a *noun* in the "principal purpose" prong of the FDCPA's definition, and the form of a *verb* in the "regularly collects" prong. But how do we get

---

[3] *Action*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/action.

[4] "[N]oun. [T]he doing of a thing." *Act*. Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/act.

[5] "[N]oun. [A] series of actions or operations conducing to an end." *Process*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/process.

[6] "[N]oun. [T]he act of arriving." *Arrival*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/arrival.

[7] "[N]oun. [T]he act of dismissing." *Dismissal*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/dismissal.

[8] "[N]oun. [A]n act or instance of launching." *Launch*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/launch.

[9] "[N]oun. [T]he act or an instance of liberating or freeing (as from restraint)." *Release*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/release.

[10] "[N]oun. [T]he act or practice of employing something." *Use*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/use.

from this unremarkable fact to the conclusion that the word "collection" cannot refer to an action?[11]  Neither the *Barbato* Court nor the Majority provide an explanation.  But it appears to me to amount to no more than a simple misunderstanding of the way words work: that because verbs typically convey "actions" and nouns typically convey "things," there can be no mixing between such categories.[12]   But surely we are expected to rise above such a rudimentary (and incorrect) understanding of grammar when we are interpreting a statutory text.

Put differently, acknowledging that "collection" is a noun (rather than a verb) does not end the inquiry, because the noun "collection" has many different definitions—some of which refer to *things* and some of which refer to *actions*.[13] We all agree that the noun "collection," depending on the context, can mean "that which is collected," or "the act or process of collecting."  But both *Barbato* and the Majority have opted for the former definition of the noun "collection" without explaining why it should be preferred over the latter, other than by pointing out that the separate, second "regularly

---

[11] For what it's worth, even the definition of the word "noun" contradicts this conclusion: A noun is "any member of a class of words that typically . . . refer to an entity, quality, state, *action* or concept." *Noun*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/noun (emphasis added).

[12] Perhaps this is what is implied in the *Barbato* Court's assertion that, "it is, after all, a verb that requires action."  916 F.3d at 268.

[13]    *See, e.g.*, *Collection*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/collection (defining "collection" as "[N]oun. [T]he act or process of collecting[;] something collected[;] GROUP, AGGREGATE[;] a set of apparel designed for sale usually in a particular season."

collects" prong of the statute employs a verb rather than a noun.   As explained, this offers no insight into *which definition* of the noun "collection" should be understood in section 1692a(6).  Since both of these definitions can be valid definitions of the noun "collection" in certain contexts, our task is to evaluate what each of them would mean.

Let me begin with the Third Circuit's definition, adopted by the Majority.  For ease of reference to this definition of "collection"—"what is collected"—one might use the synonyms "assortment" and "stockpile."[14]  Obviously, these synonyms are not mentioned in *Barbato* or the Majority opinion, but I employ them here to demonstrate what their adopted definition of "collection" would mean: When "collection" means "what is collected," it refers to the *things* that are collected.  *Barbato*, 916 F.3d at 267 (stating that this definition causes "the focus [to] shift[] from the act of collecting to *what is collected*.") (emphasis added).

What would a business look like if its primary purpose were "what is collected" instead of "the act of collecting"—in other words, for a business's purpose to be collected *things*? Of course, a business's primary objective might be to obtain a "collection" or "assortment" of coins, of paintings, or of vintage automobiles.  But unless one charges for viewing such collection, the "collection" itself—or, as the Majority would have it, the *things* that are collected—would not constitute much of a "business" as described by Section 1692a(6).  And, of course, one can even have—and maybe DNF does have—a "collection" or "stockpile" of debts.  This is what is described by the Third Circuit's and the Majority's

---

[14]   *See,   e.g.*,   *Collection*,   Merriam-Webster   Thesaurus, https://www.merriam-webster.com/thesaurus/collection.

definition: When the word "collection" means "that which is collected," it refers not to an *act* but to a *thing* (or a group of things). In other words, according to the Majority's reading of the statute, DNF's principal purpose in its business is: To maintain a debt "collection." If this sounds absurd, that's because it is.[15]

But are we really expected to believe that this is the type of debt "collection" to which Congress was referring in the "principal purpose" prong? For, what could it even mean, as the Majority joins the Third Circuit in holding, that DNF's "principal purpose" is a *group of things*—"that which is collected," or "[the debt] which is collected (or, as I have said, an "assortment" or a "[stockpile] of any debts")? 15 U.S.C. § 1692a(6). Both the Majority and the *Barbato* Court acknowledge that a business that acquires "a collection of . . . debts" without realizing their payment (or otherwise monetizing them) would soon go out of business. Maj. Op. at 9; 916 F.3d at 268. So why do they both insist that the statute seeks to encompass these nonexistent business models?

Further, a debt "collection" in this sense (describing "what is collected") is not the purpose (or business model) that either the Majority or the *Barbato* Court ultimately attribute to the purported "debt collector." *See* Maj. Op. at 13 (citing approvingly to *Barbato*, 916 F.3d at 268, that "indirect" collection "is the type of collection in which [the defendant] engages: it buys consumer debt and hires debt collectors to collect on it."). Indeed, in the midst of its

---

[15] Such a "collection" of debts might make sense for a governmental or charitable organization whose principal purpose was the *forgiveness* of debt, but not for a business which intends the debts be *paid*.

statutory interpretation, the *Barbato* Court reasons (and the Majority quotes approvingly) that "Congress used the noun 'collection' and did not specify *who must do the collecting* or to whom the debt must be owed." *Id.* at 267 (emphasis added); Maj. Op. at 11. Put differently, even while espousing the significance of Congress's employment of "collection" as a noun, the *Barbato* Court acknowledges that it is of course the *act* of *collecting* (used there in the present participle form of a verb) that the FDCPA's "principal purpose" prong seeks to capture. Thus, according to both *Barbato* and the Majority, the only proper definition of the noun "collection" in section 1692a(6) is as an *action* (as opposed to a *thing*). And thus in both prongs, it is ultimately a business's action or activity that brings the purported debt collectors into the realm of the statute.

That is why it makes much more sense in this context to adopt the definition that DNF urges for "collection," which is "the act or process of collection." Then the statute reads, rather straightforwardly, that a "debt collector" is "any business the principal purpose of which is the ['the act or process of collecti[ng]'] of any debts." Focusing on the act or process of collecting, rather than on "what is collected"—DNF's debt "collection"—also functions to exclude certain businesses from the "principal purpose" definition, businesses which are obviously outside the intended scope of the statute. For example, is there any doubt that a fixed-income investor who exclusively buys and holds corporate and municipal bonds to maturity has the "*raison d'être* [of] obtaining payment on the debts that it acquires," *Barbato*, 916 F.3d at 267, and is—I think all would

agree—*not* a "debt collector" under either definition of the FDCPA?[16]

The interpretation that "collection" be defined as an "act" or "process" does not create a "direct interaction" requirement, as stated by the district court below and rejected by the Majority.  Rather, this is simply the requirement that the statute itself imposes: That the purported debt collector have as its principal purpose an act or process that can be fairly described as "collection," as put forth in section 1692a(6).  McAdory has simply not alleged that DNF engages in any such acts or processes.  So how can it be said that DNF—a business which, according to the allegations of the complaint, never performs the act or process of collecting—has the principal purpose of "the collection of any debts"?

## B.

Because a noun can denote an action, I have no trouble accepting the most straightforward definition of the noun "collection": a "debt collector" is "any business the principal purpose of which is [the act or process of collecting] any debts."  I fully acknowledge that this interpretation means that *both* prongs of the "debt collector" definition of section 1692a(6) devote some focus to a person's actions or activity.

---

[16] Or, if it is fairly implied that *Barbato*'s language was limited only to defaulted consumer debts, consider the business model suggested later in that decision, one who "buy[s] debt for the purpose of reselling it to unrelated parties at a profit." 916 F.3d at 268.  One can still say that its "*raison d'être* is obtaining payment" on that debt, yet under the Majority's reasoning none of the FDCPA's prohibitions would apply to its business activities, for it obtains payment on the debt from the buyer of the debt, not the debtor.

Contrary to the Majority's assertion, though, this interpretation does not render either prong of the statute superfluous, for the actors under the two prongs are described quite differently. The Majority's contrary assertion ignores the substantial differences that exist between what qualifies a "debt collector" under the first prong and what so qualifies under the second prong.

Under the second, "regularly collects" prong, a business does not qualify as a debt collector unless it is collecting debts "for another"—that is, debts that it does not own. Such a business cannot be a debt collector unless it also collects another's debts "regularly," meaning that even if collection of debts owned by others is its exclusive line of business, collection activity that is merely occasional will disqualify it from the definition. And finally, the statute expressly provides that such collection activity may be done "directly or indirectly."

To the contrary, under the first, "principal purpose" prong, which the Majority opinion would apply to DNF, a business can qualify as a debt collector even if it is collecting on debts that it owns. Such a business can be a debt collector even if it collects on debts only occasionally or irregularly, so long as such collection remains its most important goal or aim (or, as the statute puts it, its "principal purpose").[17] And finally, what is particularly relevant for DNF: unlike the "regularly collects" prong, the debt "collection" that amounts

---

[17] Such a "debt collector" need not have bought the debt for "pennies on the dollar," as is alleged DNF did. The firm could buy the debt for no money up front but solely on the basis of returning a percentage of the amount actually recovered on the debt. Such a business would have only one "principal purpose": the collection of debt.

to the business's "principal purpose" must be made directly against the debtor, since "directly or "indirectly" is a requirement of the second prong but not of the first prong.[18]

Of course, the Majority is correct that the "principal purpose" prong contains no express requirement that qualifying debt "collection" must be made directly against consumer debtors.  But on what basis does the Majority conclude that "[c]ollection' by its very definition may be indirect," such that an express requirement would be necessary?  Maj. Op. at 13 (citing *Barbato*, 916 F.3d at 268). Congress obviously does not agree: If this were true, why does the "regularly collects" prong clarify that qualifying debt collection may be done "directly or indirectly"? § 1692a(6).    The Majority's reasoning renders this clarification completely superfluous.  Given that we must "presume differences in language like this convey differences in meaning," *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017), I cannot follow the Majority in ignoring this absence of this clarification in the "principal purpose" prong, so as to conclude that "indirect" actions towards consumers can qualify as "collection" from consumers.

This becomes even more apparent when we acknowledge that "[t]he [FDCPA] regulates interactions between consumer debtors and debt collectors." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing section 1692a(5) and the "regularly collects" prong of section 1692a(6)).  With this in mind, we ought to expect an express statement from Congress when the FDCPA's restrictions apply to a business that merely collects debts "indirectly"—

---

[18] Scalia & Garner, op. cit. at 174–179.

that is, without any direct collection from the consumer debtor. And this is exactly what we find in the "regularly collects" prong, and exactly what is absent in the "principal purpose" prong at issue here. As such, it is not my interpretation but rather that of the Majority which would render the word "indirectly" in the second prong of the definition superfluous.

## IV.

In conclusion, I reiterate my initial reason for dissenting. In my opinion, the above discussion as to the proper way to interpret the first prong's definition of "debt collector" in section 1692a(6) is entirely unnecessary in this case. If the Majority believes that DNF may be liable for MNS's violations of the FDCPA, it need not distort the statute with erroneous grammatical distinctions in order to so hold. Case law that is binding on this Court already provides an available path.

McAdory alleged not that DNF made any direct contact with her, or that any of DNF's actions violated the FDCPA in any way. Instead, she alleged that DNF should be held vicariously liable for MNS's direct violations. While the Ninth Circuit has "recognized vicarious liability under the FDCPA," *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)), it has never addressed the question whether a person must also be a "debt collector" subject to the FDCPA to be vicariously liable for the actions of another person, who, like DNF, is indeed a "debt collector."

Below, at the motion to dismiss stage, both parties argued under *Fox*, *Clark*, and out-of-circuit case law that DNF could be vicariously liable for MNS's actions under the FDCPA *only if* DNF itself meets the definition of "debt collector" under section 1692a(6).[19]   Despite *Clark*'s clear statement that "general principals of agency . . . form the basis of vicarious liability under the FDCPA," the district court accepted the parties' premise—that a principal could not be vicariously liable for its agent's FDCPA violations unless that principal was itself a "debt collector" under the FDCPA—and considered its conclusion that DNF was not a "debt collector" to end the inquiry.   We have never held that the question whether a business is a "debt collector" under the FDCPA "logically precedes consideration of whether and when a debt collector can be held vicariously liable for the actions of another debt collector."   Maj. Op. at 16.   And neither the FDCPA nor our governing case law require such a conclusion.

---

[19] *See, e.g.*, *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (declining to hold a non-"debt collector" vicariously liable for its attorney's violations of the FDCPA);   *Pollice*, 225 F.3d at 405 (citing *Fox* and *Wadlington* and stating that its finding of vicariously liability "is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.");   *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (stating that the "key question, according to the Third Circuit in *Pollice*, is whether the defendant whom the plaintiff seeks to hold vicariously liable is itself a debt collector," because the FDCPA "require[s] a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf.  On the other hand, a company that is not a debt collector would not ordinarily be subject to liability under the Act at all.").

The Supreme Court has stated, when evaluating a claim of vicarious liability under a different statutory scheme, that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer*, 537 U.S. at 285. The Court continued:

> It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"); *New Orleans, M., & C.R. Co. v. Hanning*, 15 Wall. 649, 657, 21 L.Ed. 220 (1873) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of").

*Id.* at 285–86 (holding that under traditional principles of vicarious liability, a corporation is the principal of its employees/agents, and thus corporate owners and officers are not liable for the unlawful acts of an employee simply on the basis that the owner or officer controlled (or had the right to control) the actions of that employee).

McAdory expressly abandoned this argument when arguing before this Court, so I will not address the adequacy of the allegations in the operative complaint. Instead, I am

content to conclude as follows: While the operative complaint did not sufficiently allege that DNF is a "debt collector" under the FDCPA, longstanding case law that is binding on this Court holds that such a status is not necessary for DNF to be held vicariously liable for MNS's alleged actions. But because this argument was expressly abandoned, I would hold that the district court's grant of DNF's motion to dismiss should be affirmed.